[No. 8160.]

## PIERCE ET AL. V. CURRY.

The court below sustained an attachment of the properties of a corporation upon the confession of the corporate authorities, overruling the objection of stockholders, not supported by the evidence. Affirmed.

*Error to Denver District Court.* Hon. H. C. RIDDLE, Judge.

Messrs. MCCALL & MCCALL, Mr. GEO. B. CAMPBELL, and J. G. DICKINSON, for plaintiffs in error.

Mr. JOSHUA GROZIER, and Messrs. BARNETT & CAMPBELL, for defendant in error.

SCOTT, J., delivered the opinion of the court.

On the 31st day of August, 1911, F. A. Trinkle and Julia A. Trinkle, his wife, executed their joint promissory note to the defendant in error, J. P. Curry, in the sum of $2,500. Trinkle at the time was the owner of an automobile business in the City of Denver. Later, there was organized the F. A. Trinkle Automobile Company, a corporation which took over the business of F. A. Trinkle. The capital stock of this corporation was $20,000, of which Trinkle received one-half in consideration for his business, and the plaintiffs in error were to take up the remainder of the stock at its par value for cash. Pierce paid in $2,000 and Cover $500, for which they received a proportionate amount of stock.

No other money was paid into the company, by plaintiffs in error, and no other stock issued. Pierce, Cover and Trinkle constituted the board of directors. Pierce became the president and Cover the secretary of the corporation. Later, Pierce and Cover, acting as the board of directors, discharged Trinkle from employment in the business.

This suit was for recovery upon the note, and the complaint alleged that the automobile company had assumed and agreed to pay the Curry note. At the commencement

of the action, a writ of attachment was sued out and a levy was made upon the property of the company. A forthcoming bond was given by the company, with the plaintiff in error, the Equitable Surety Company, as security on the bond.

The answer of the company to the complaint denied that the company had assumed or agreed to pay the note sued on and likewise denied the allegations in the affidavit of attachment constituting the grounds therefor. But no traverse of the attachment was filed as provided by the statute.

On February 9th, 1912, judgment was rendered against all the defendants upon the note, but the court denied the attachment. On March 4th, 1912, the plaintiff filed his motion for a new trial as related to the attachment, and on the same day Garwood and Garwood entered their appearance as attorneys for the company, over the objection of counsel, theretofore acting.

It appears that in the meantime a meeting of the stockholders of the Automobile Company had been held, a new and different board of directors and officers elected, and the former attorney of the company discharged.

On April 8th, 1912, the court granted an order for a new trial in the attachment proceeding, and time was given for the defendant company in which to traverse the attachment. On April 18th, 1912, the attorney who had been discharged by the company filed an unsigned paper which purported to be a traverse of the attachment by the company. This paper was not filed within the time allowed by the court, was filed by an attorney who had been discharged by the company, and was wholly without its authority. On June 7th, 1912, Pierce and Cover, who had been ousted as officers and directors of the company, appearing through the discharged company's attorney, filed their petition for intervention, as stockholders of the corporation. At the same time the Equitable Surety Company filed its petition for intervention. Both petitions were granted.

Thereafter the plaintiff filed his answer to these separate pleas. On the 8th day of October, 1912, the court found for the plaintiff and sustained the attachment. The court entered separate orders granting a stay of execution for thirty days, and allowing ninety days to Pierce and Cover, and to the Equitable Surety Company, in which to make and tender a bill of exceptions. The plaintiff later filed his motion to strike these several orders from the files.

On the 4th day of November, 1912, this motion was sustained, but on the same day like orders were again entered.

There are many questions raised in this case which do not go to the merits of the controversy, including a motion to dismiss the writ of error, but waiving a discussion and determination of all these, we proceed to the consideration of the sole question at issue, did the court err in sustaining the attachment?

Upon the hearing the company appeared and confessed the validity of the attachment proceeding. This confession, however, was made after the election of the new officers and board of directors, and by the company as then officered.

The issue tendered by the intervenors was that this was by connivance and collusion with the plaintiff. Upon this point the court said:

"COURT: The witness is the president of the corporation which has confessed and desires to admit the allegations contained in the affidavit of attachment. A resolution, passed by the board of directors, has been introduced, in which the attorney for the company is instructed not to contest it, for the reason that the company, through its officers, believed that the attachment was well taken. The minority stockholders intervened, on the assumption that the action of the board of directors and the officers of the company was antagonistic to the best interests of the company. Now a number of these objections, if the status of the parties were different, would be proper and would be sustained, but any information that comes from the company and which is not

challenged as to its truth and veracity, where the company itself does not object to it, the court is going to admit. If the minority stockholders desire to attack any of these items in the inventory, or the testimony of the witness, the president of the company, upon the grounds that they are not the truth, or that they are a fraud upon the court and upon the minority stockholders in some way, that will be permitted, but unless the minority stockholders succeed in demonstrating that fact, the court is going to sustain this attachment upon the confession of the defendant company itself. I will say to you now that the whole purpose of this investigation at this time is to enable the minority stockholders (and other intervenor) to ascertain and show to the court, if they can, that fraud has been perpetrated upon them, or is about to be perpetrated upon them by this proceeding."

And again:

"COURT: On the intervention of the surety upon the bond and the intervention on behalf of the minority stockholders, the court has conducted the whole inquiry for the purpose of finding out whether the minority stockholders and the bonding company are being defrauded."

It will thus appear that by the finding and judgment of the court it was determined that the charge of fraud was without merit. It would seem from the reading of the record that this finding could not have well been otherwise. In any event we are clearly not justified in disturbing the finding.

Then with the confession of the ground for attachment by the defendant company, against whom it was directed, it was the duty of the court to sustain the attachment.

We may add further, that the testimony to sustain the attachment was such that the court having all the witnesses before it would, in our opinion, have been justified in sustaining the attachment upon one or more of the grounds

upon which it was based, had the court elected to pass upon the merits of that question as well.

*The judgment is affirmed.*

GABBERT, C. J., and GARRIGUES, J., concur.